METHUEN CONSTRUCTION COMPANY, INC. *vs.*
J & A BUILDERS, INC.

Essex.    June 10, 1975. — June 24, 1976.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Practice, Civil,* Action transferred to District Court. *Evidence,* Prima facie evidence. *Contract,* Indemnity.

A defendant in a contract action who did not claim a report to the Appellate Division but retransferred the case to the Superior Court following a finding for the plaintiff in a District Court was not entitled to instructions which would have had the practical effect of requiring a verdict for the defendant. [400-402]

In a contract between a construction company doing road repair work and a developer of nearby property wherein the developer was permitted to interrupt the repairs in order to lay a sewer line, a provision of the contract that the developer would "indemnify and ... hold [the company] harmless from any loss, damages or causes of action which may arise from the installation and construction of the

sewer line" included the cost of complying with requirements imposed by State and town officials as a result of the developer's operation, without regard to its negligence. [402-403]

CONTRACT.   Writ in the Superior Court dated March 10, 1970.

Following transfer to the District Court of Lawrence and retransfer to the Superior Court, the action was tried before *Hallisey*, J.

*Salvatore J. Basile* for the defendant.

*Victor L. Hatem* for the plaintiff.

GOODMAN, J.   This is an action brought on an indemnity clause. In June, 1969, the plaintiff was engaged in road repair work for the town of Andover, and the defendant was simultaneously developing real estate nearby. When the road repairs were nearly completed the defendant, which had obtained the town's permission to install a sewer line, sought the plaintiff's permission to interrupt the repairs, excavate a trench in the roadbed, and lay the sewer line. The parties entered into a written agreement, pursuant to which the defendant was to hire a specified contractor to do the work of laying the sewer line and was to pay the plaintiff an amount equal to ten percent of the charge made by the contractor. The agreement provided that the defendant would "indemnify and . . . hold [plaintiff] harmless from any loss, damages or causes of action which may arise from the installation and construction of the sewer line." Other relevant provisions are set out in the margin.[1]

---

[1] These include:

"(a) . . . [Defendant] will restore the road to substantially the same condition as it was prior to the installation of the sewer in said road, at all times complying to the specifications of the Commonwealth of Massachusetts.

"(b) . . . [Defendant] covenants and agrees that the work . . . will be completed by July 9, 1969, at 5 P.M., unless further extended by the Town of Andover, and the Commonwealth of Massachusetts, Department of Public Works.

"(c) . . . [Defendant] covenants and agrees to assume full and complete responsibility for the roadway . . . and to surface said roadway in a safe road condition with good and serviceable materials, meeting the specifications of the Commonwealth of Massachusetts."

Thereupon, the defendant's contractor dug a trench in the road about six to seven feet in depth and laid the sewer line. He then refilled the trench and partially restored the roadbed. While the trench was open, compacted organic material was exposed to view below the level at which the plaintiff had conducted the road repair operations called for by its contract with the town. The State engineer instructed the plaintiff to remove the organic material and replace it with gravel, and the plaintiff did so. The plaintiff was paid for this work but was not paid for the consequent regrading and similar work required to bring the road back to the condition in which the plaintiff had previously put it under his contract with the town. The plaintiff brought suit under the indemnity clause of the agreement for its uncompensated costs.[2]

The action was commenced in the Superior Court and transferred to the District Court of Lawrence pursuant to G. L. c. 231, § 102C. The District Court found for the plaintiff in the amount of $3,361. The defendant did not seek review in the Appellate Division (see *Lubell* v. *First Natl. Stores, Inc.* 342 Mass. 161, 165 [1961]) but exercised its right to retransfer the case to the Superior Court, where the case was retried to a jury prior to July 1, 1974, the effective date of the Massachusetts Rules of Civil Procedure. The trial judge submitted the case to the jury under leave reserved (G. L. c. 231, § 120, as in effect prior to St. 1973, c. 1114, § 203); he charged them that the indemnity clause was ambiguous and that it was for them to determine its coverage. He also instructed them as to the prima facie effect of the District Court's finding. The jury returned a verdict of $4,113.[3] On appeal

---

[2] No issue is raised as to the rights and liabilities between the plaintiff and the town or the State, and no argument is made that the plaintiff was at fault in failing to discover the compacted material. Further, the jury were instructed that the plaintiff could not recover for damages resulting from its own negligence.

[3] The plaintiff was allowed to amend its declaration in the Superior Court by adding in the count on the indemnity clause a claim under another provision of the contract not here in issue, alleging the defend-

(Mass.R.Civ.P. 1A, par. 7, 365 Mass. 732 [1974]) the defendant argues that the indemnity clause is unambiguous and that, as a matter of law, the loss incurred by the plaintiff was not covered. This issue was raised (1) by exceptions to the trial judge's refusal to give various instructions to the jury embracing the defendant's view that the clause unambiguously excluded liability, (2) by an exception to the judge's charge that the clause was ambiguous as a matter of law, and (3) by an exception to the denial of the defendant's motion for the entry of a verdict under leave reserved. We order the entry of judgment in accordance with the verdict.

1. If the trial judge had given the instructions requested by the defendant the practical effect would have been to require the jury to enter a verdict for the defendant, tantamount to a directed verdict or the entry of a verdict for the defendant under leave reserved. But the defendant did not resort to the Appellate Division, and therefore the jury could not have been thus directed in the face of a contrary finding in the District Court, regardless of the state of the evidence in the Superior Court. *Lubell* v. *First Natl. Stores, Inc.* 342 Mass. at 164. *Akron Brick & Block Co.* v. *Moniz Engr. Co.* 365 Mass. 92, 94 (1974). *Williams* v. *Benton Park Package Store, Inc.* 1 Mass. App. Ct. 844 (1973). *Richard* v. *Massachusetts Port Authy.* 2 Mass. App. Ct. 826 (1974). See *O'Brion, Russell & Co.* v. *LeMay,* 370 Mass. 243, 245 (1976). We do not know what evidence was before the District Court judge on which the finding was based; the Superior Court could consider only the bare finding and the amount of damages assessed in the District Court. *Lubell* v. *First Natl. Stores, Inc.* 342 Mass. at 163-164. *Adams, Harkness & Hill, Inc.* v. *Northeast Realty Corp.* 361 Mass. 552, 555-556 (1972). *Catania* v. *Emerson Cleaners, Inc.* 362 Mass. 388, 389 (1972). Indeed,

---

ant's failure properly to clean up the shoulder of the road. The declaration originally alleged only a breach of the indemnity clause; the answer so far as relevant was a general denial. The jury awarded $752 on the added claim, and no error is claimed. The remainder of the $4,113 represents the jury's award on the indemnity clause.

for all we know the evidence in the District Court might have been quite different from the evidence in the Superior Court, such that even on the defendant's interpretation of the indemnity clause the finding for the plaintiff might have been warranted. The District Court finding does not lose its viability as evidence warranting a verdict for the plaintiff merely because, on the other evidence before the Superior Court, a verdict for the plaintiff appears unwarranted, or even wrong, as a matter of law. See *S. Albertson Co. Inc.* v. *Great Northern Ry.* 342 Mass. 326, 327 (1961).

The finding of the District Court presented a mixed question of law and fact as to the coverage of the indemnity clause. Had the parties obtained review in the Appellate Division the judge of the Superior Court could have examined the correctness of the finding in the light of the District Court's report. *Henry* v. *Mansfield Beauty Academy, Inc.* 353 Mass. 507, 508-509 (1968). *Harrison* v. *Textron, Inc.* 367 Mass. 540, 552-553 (1975). Since, however, no report was claimed to the Appellate Division the judge of the Superior Court was required to instruct the jury that it could find for the plaintiff on the basis of the District Court finding alone, disregarding all the other evidence. *Lubell* v. *First Natl. Stores, Inc.* at 164. *Spritz* v. *Lishner,* 355 Mass. 162, 165 (1969). Thus, even if the trial judge had accepted the defendant's interpretation of the indemnity clause, we cannot see how the defendant could have been entitled to more than a careful instruction to the jury that they could either (1) accept the finding of the District Court and return a verdict for the plaintiff or (2) disregard the finding of the District Court and return a verdict for the defendant.[4] But in this case we do not believe that the defendant was entitled to such an

---

[4] The plaintiff contends that the defendant's failure to seek review in the Appellate Division precludes the Superior Court and this court from deciding any questions of law which might bear on the outcome of the case. This contention goes too far. See *Universal C. I. T. Credit Corp.* v. *Ingel,* 347 Mass. 119 (1964). *Akron Brick and Block Co.* v. *Moniz Engr. Co. Inc.* 365 Mass. 92 (1974). *Garber's Auto Rental, Inc.* v. *Genoa Packing Co.* 2 Mass. App. Ct. 298 (1974).

instruction in the alternative because, in our view, the indemnity clause clearly covers the loss at issue.

2. The agreement, as a whole, bespeaks a concern, quite understandable, with the possible effect of the defendant's excavation on the plaintiff's responsibilities to town and State officials for the roadwork it undertook. Thus the agreement provides for compliance with "specifications of the Commonwealth of Massachusetts" in various respects (see fn. 1, clauses [a] and [c]) and that an extension beyond the date for completion set in the agreement would have to be given by the "Town of Andover, and the Commonwealth of Massachusetts, Department of Public Works" (fn. 1, clause [b]). We read the indemnity clause to reflect this same concern with a possible "loss" arising out of the action of town and State officials overseeing the plaintiff's work. We thus reject the defendant's argument that the indemnity clause should be confined to losses caused directly by the acts of the indemnitor; no such limitation was written into the indemnity clause. Compare *Naukeag Inn, Inc.* v. *Rideout,* 351 Mass. 353, 356 (1966); *Schuster* v. *Baskin,* 354 Mass. 137, 140-141 (1968). Further, the language of the indemnity clause is sufficiently broad and unqualified to accommodate that manifest concern. Thus, without attempting to define the exact scope of the indemnity clause, we construe "any loss ... which may arise from the installation and construction ..." to include losses imposed by State and town officials having their source in the defendant's operation, without regard to its negligence. See *Albert* v. *Welch,* 360 Mass. 397, 399 (1971), and cases cited; Couch, Insurance, § 45.56, p. 147 (2d ed. 1964); 89 A.L.R. 2d 150, 161 (1963). Compare *Farrell* v. *Eastern Bridge & Structural Co.* 291 Mass. 323, 325 (1935); *New York, N. H. & H. R.R.* v. *Walworth Co.* 340 Mass. 1 (1959), in which the indemnity clause was construed to extend even to negligent acts of the indemnitee. The court in that case pointed out that "[c]ontracts of indemnity are to be fairly and reasonably construed ... with reference to the situation of the parties when they made it and to the objects sought to be accom-

plished" (at 3). It rejected the argument that the contract "excluded from coverage one of the most frequent grounds of liability in railroad operation" (at 7).

We thus hold that the cost of regrading and similar work which had its source in the exposure of the organic material when the defendant's trench was dug and which the plaintiff incurred as a result of the action of the State engineer without any fault on the plaintiff's part (see fn. 2 and related text) was a loss compensable under the indemnity clause.

The case of *Massachusetts Turnpike Authy.* v. *Perini Corp.* 349 Mass. 448 (1965) (the *Perini* case), on which the defendant relies, is not to the contrary. The court there takes the same approach adopted in *New York, N. H. & H. R.R.* v. *Walworth Co.* 340 Mass. at 3. We do not deem it significant to the result in the instant case that the court in the *Perini* case excluded from the ambit of a broad indemnity clause liability resulting from "the sovereign act of appropriation of property by eminent domain" (at 455). The arrangement embodied in the construction contract in the *Perini* case between a governmental authority and a contractor is a familiar one, and the parties may, absent specific language to the contrary, be assumed to have intended that the obligations to indemnify should not extend "beyond usual forms of tort liability" arising from the indemnitor's acts (at 455). In the present case the contract between the two parties is made with reference to the requirements specifically of State officials, and it seems natural that the catchall indemnity clause should cover losses resulting from their acts. In the circumstances, we do not believe the clause is ambiguous so as to require that it be construed against the plaintiff because its attorney drafted the clause. *Perini* case, at 454.

Thus the charge to the jury that the meaning of the indemnity clause was ambiguous and for them to determine was more favorable than what the defendant was entitled to. *Robert Indus. Inc.* v. *Spence*, 362 Mass. 751, 755 (1973). The defendant takes nothing by his exception

to the charge; the jury's verdict for the plaintiff made any error in this respect immaterial.

*Judgment is to be entered in accordance with the verdict.*