Curran, Dennis J., J.
Jonathan Rice is a delivery driver for Commonwealth Medical Carriers, a courier service that provides deliveiy services for the defendant Partners Pharmacy Services, LLC. He seeks to certify and represent a class of similarly-situated drivers who deliver Partners’ products to customers across the Commonwealth. He asserts that, although he and other drivers signed employment agreements which classified them as “independent contractors,” they are, in reality, employees of Partners and are therefore entitled to compensation for travel expenses, overtime pay, and other benefits from Partners under our state wage and hour laws, G.L.c. 149, and our independent contractor law, G.L.c. 149, §148B.
Partners counters that neither Mr. Rice nor his putative class are Partners employees, and argues that the state laws which form the basis of the plaintiffs complaint are preempted by federal law, specifically, the Federal Aviation Administration Act, or “FAAA.” It is on this basis that Partners has filed a motion for summary judgment. Mr. Rice counters that the FAAA is inapplicable to Partners. After a careful review of the parties’ voluminous submissions on the preemption issue, the Court must agree that Mr. Rice’s claims are indeed preempted, and therefore orders that Partners’ motion for summary judgment be ALLOWED.
FACTUAL BACKGROUND
Partners provides “institutional pharmacy services” to customers throughout the Commonwealth. These services include, primarily, the distribution of pharmacy supplies and medications to rest homes, nursing homes, and assisted living facilities. It provides these services through a network of related limited liability companies in Connecticut, Florida, Maryland, Missouri, New Jersey, New York, Pennsylvania, Texas, Virginia, and Massachusetts.
A major component of Partners’ customer service model is the delivery of the pharmaceutical products it sells directly to its consumers. Direct delivery is the sole manner in which products are provided to customers. These delivery services are a significant component of the pricing for Partners’ services and the products it sells. To provide these services, Partners contracts with independent courier companies such as Commonwealth Medical Carriers, which, in turn, hire individual drivers such as Mr. Rice (and members of his proposed class) to transport and deliver Partners’ products. These drivers typically use their own vehicles to deliver the products, and are classified as independent contractors.
Partners does not reimburse drivers like Mr. Rice for any costs associated with the maintenance or insurance of their personal vehicles, the cost of fuel, mileage, or any other associated incidental costs.
Partners complains that its product pricing, services, and delivery routes would all be significantly impacted if it were required to directly employ deliveiy drivers and classify them as employees. It contends that these added costs would substantially affect its profitability, pricing, as well as the routes and services it provides to customers. Although these financial concerns are of paramount concern to Partners, they must also be considered to a lesser, but nevertheless certain extent by the Court, because of the preemption law defense invoked by Partners.
SUMMARY JUDGMENT STANDARD
Partners is entitled to summary judgment if it can demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). Partners, as the moving party, carries the burden of affirmatively demonstrating the absence of a triable issue, and may satisfy its burden either by submitting affirmative evidence that negates an essential element of the plaintiffs case, or by demonstrating that the plaintiff has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical *470 Commc'n Corp., 410 Mass. 805, 809 (1991). If Partners meets this burden, Mr. Rice is obligated to set forth specific facts showing that there is a genuine issue for trial if he wishes to survive summary judgment. O’Brion, Russell & Co. v. LeMay, 370 Mass. 243, 245 (1976). He may not rest on his pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). The Court, as it must, reviews the evidence in the light most favorable to the plaintiff, as the nonmoving party, but does not weigh evidence, assess credibility, or find facts. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976).
This action is appropriately decided on Partners’ motion for summary judgment where the essential facts set out above are not in dispute, and where the disagreements among the parties concern only legal questions.
ANALYSIS
Applicability of the FAAA
The primary question before the Court is whether the FAAA preempts Mr. Rice’s claims under the independent contractor law (and therefore his wage and hour law and unjust enrichment claims as well). The FAAA “broadly preempts” state laws relating to the prices, routes, or services of any “motor carrier” or “motor private carrier” transporting property. 49 U.S.C. §14501(c)(l). Before it reaches the preemption issue, the Court must first address the plaintiffs contention that Partners is not a “motor carrier” or a “motor private carrier” under the FAAA, and thus not entitled to its preemption protections.
The terms “motor carrier” and “motor private carrier,” as referred to in the FAAA, are defined in the federal Motor Carrier Act. A motor carrier is defined as “a person providing motor vehicle transportation for compensation.” 49 U.S.C. §13102(14). A motor private carrier is a person, other than a motor carrier, transporting property by motor vehicle when: (a) the transportation involves interstate commerce; (b) the person is the owner, lessee, or bailee of the property being transported; and (c) the property is being transported for sale, lease, rent, or bailment, or to further a commercial enterprise. 49 U.S.C. §10102(16). The difference, in other words, is that a motor carrier is for hire to transport property, and a motor private carrier transports property for the purpose of selling that property." Julian v. Deparment of Revenue, 339 Ore. 232, 236 (2005). Although Partners is clearly not a motor carrier because it does not hold itself out as a transport for hire to the public, the Court can discern no reason why Partners does not fall under the definition of a motor private carrier.
Mr. Rice does not dispute that Partners provides “institutional pharmacy services” to customers throughout the Commonwealth. He further concedes that Partners’ business “is the distribution of pharmacy supplies and medications to rest homes, nursing homes, and assisted living facilities,” among other healthcare providers that do not have on-site pharmacies but regularly require pharmaceutical products and services. He presents no evidence that direct delivery of its products constitutes a significant component of the pricing for Partners’ services and the products it sells. It plainly engages Mr. Rice and other drivers to “further [its] commercial enterprise,” and owns the products it delivers. 49 U.S.C. §10102(16).
Mr. Rice contends that Partners is not a motor private carrier because the transportation of its products does not involve interstate commerce. See id., §10102(16). Indeed, Partners does deliver its products exclusively to Massachusetts customers directly from its facility here. But this does not end the interstate commerce inquiry. “Whether transportation is interstate or intrastate is determined by the essential character of the commerce, manifested by the shipper’s fixed and persisting transportation intent at the time of the shipment, and is ascertained from all of the facts and circumstances surrounding the transportation.” South Pac. Transp. Co. v. I.C.C., 565 F.2d 615, 617 (9th Cir. 1977). Thus, Partners operates in interstate commerce not only if its retained drivers actually transport goods across state lines, but also when there is a “practical continuity of movement [of its goods] from the manufacturers or suppliers without the state, through [a] warehouse, and on to customers whose prior orders or contracts are being filled.” Walling v. Jacksonville Paper Co., 317 U.S. 564, 567 (1943). Such is the case here. Partners’ Chief Operating Officer has stated under oath that when Partners orders pharmaceuticals from out-of-state suppliers, those suppliers deliver products into Massachusetts from out-of-state, commonly through FedEx or UPS. Partners orders supplies based on estimates of customers’ anticipated needs in satisfaction of multi-year contracts to provide products to its customers. Mr. Rice has presented no controverting evidence on this point. “A temporary pause in [Partners’] warehouse does not mean [the products] are no longer ‘in commerce’ within the meaning of the [M]otor [C]arrier [A]ct[.]” Klitzke v. Steiner Corp., 110 F.3d 1465, 1470 (9th Cir. 1997), quoting Walling, 317 U.S. at 568.
Partners transports its properly by interstate commerce, owns that property, and transports it to further its business enterprise. It is therefore a motor private carrier under both the Motor Carrier Act and the FAAA. With the issue of the applicability of FAAA to Partners now settled, the Court proceeds to the preemption question.
Federal Preemption of Massachusetts Independent Contractor Law
The Supremacy Clause of the United States Constitution implicates the doctrine of federal preemption. See U.S. Const., art. VI, c. 2. A state law conflicting with federal law is said to be preempted and is without effect. Partners’ motion is premised entirely on its *471 contention that the FAAA preempts the state law which forms the basis of Mr. Rice’s claims—the independent contractor law.
The goal of the FAAA is to foster an environment in which service options will be dictated by the marketplace, not state regulatory regimes. Congress enacted this constraint on state legislatures in order to ensure that the prices, routes and services of transportation providers reflect “maximum reliance on competitive market forces” to encourage “efficiency, innovation, low prices . . . variety, and quality.” Rowe v. New Hampshire Motor Transp. Ass’n, 552 U.S. 364, 371 (2008), quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992). Thus, under the FAAA, state laws having a connection with, or reference to carrier rates, routes, or services are preempted. Id. at 370. This is true even where the state law has only an indirect effect on rates, routes or services, where the law is still consistent with federal regulations, id., and where the impact is only “potential.” Massachusetts Delivery Ass’n v. Coakley, 769 F.3d 11, 21 (1st Cir. 2014). Empirical evidence of these effects is unnecessary. Courts may assess the logical effect that a law has on routes, prices, or the provision of services. Id. at 22.
The Massachusetts independent contractor law, G.L.c. 149, §148B, regulates the circumstances in which an employer may classify a worker as an “independent contractor.” It provides that an employer may only legitimately classify a worker as an independent contractor if he can show that: (A) the worker is free from control or direction when performing the service on behalf of the employer; (B) the service is performed outside the usual course of the business of the employer; and (C) the worker is customarily engaged in an independently established trade, occupation, profession or business of the same nature as the service he is performing for the employer. This law aims to protect employees from being deprived of the benefits enjoyed by employees through their misclassification as independent contractors. Somers v. Converged Access, Inc., 454 Mass. 582, 592 (2009). In enacting §148B, the Legislature was cognizant of the windfall that employers enjoy from the misclassification of employees as independent contractors. Examples include: “the avoidance of holiday, vacation, and overtime pay; Social Security and Medicare contributions; unemployment insurance contributions; workers’ compensation premiums; and income tax withholding obligations.” Id. at 592. The Legislature appeared to recognize also that the practice gave some employers an unfair competitive advantage over employers who correctly classify their employees and bear the brunt of associated financial costs. Id.
The First Circuit Court of Appeals, in Massachusetts Delivery Ass’n, held that the Massachusetts independent contractor law governs the classification of couriers for delivery services, and “potentially impacts the services the delivery company provides, the prices charged for the delivery of property, and the routes taken during this delivery.” 769 F.3d at 23. However, it declined to affirmatively find preemption on the record before it. The United States District Court for the District of Massachusetts, on remand of the appeal in the case, conducted a detailed analysis of the logical effects that the independent contractor law would have on routes, service, and prices of the motor carrier in that case, and held that “prong B” of the independent contractor law, requiring employers to demonstrate that the services performed by their independent contractors are outside the usual course of the business, is preempted by the FAAA. Prong B alone was implicated in the case because “couriers hired to provide delivery services are without exception performing within the usual course of business of [ ] delivery companies.” Massachusetts Delivery Ass’n v. Coakley, 117 F.Sup.3d 86, 90 (D.Mass. 2015). The court declined to extend the preemption to prongs A and C. Id. at 98. Subsequently, the First Circuit Court of Appeals held that prongs A and C were severable from prong B, and were not preempted, facially at least, by the FAAA. Schwann v. FedEx Ground Package Sys., 813 F.3d 429, 441 (1st Cir. 2016). The Court adopts the reasoning set forth by these federal court interpretations of federal law and holds that prong B of the independent contractor law is facially preempted by the FAAA in the delivery context.
Mr. Rice makes no argument that the defendants are nevertheless liable under prongs A and C of the independent contractor law. A colleague in this Court recently considered and astutely rejected that premise where it was evident that the effects of all three prongs would have a significant impact on the routes, prices, and services of the motor carrier. See Chambers v. RDI Logistics, Inc., 33 Mass. L. Rptr. 190, *32-33 (2015) (Moses, J.). Mr. Rice here does argue that Partners’ motion is premature where he has contested the information contained in the affidavits of Partners’ Chief Operating Officer concerning the likely consequences of classifying the plaintiff and the members of his proposed class as employees rather than independent contractors. As stated, however, concrete or empirical evidence is not necessary where the independent contractor law’s “logical” impact on Partners’ prices, routes, and services is significant. This Court, in Chambers, relied primarily on affidavits from representatives of the motor carrier in determining that the effect of reclassification would be substantial. The Chambers plaintiffs, like Mr. Rice here, offered no evidence of their own to rebut the motor carrier’s affidavits, but asked the Court to allow them to conduct additional discovery. The Court denied that request, finding that “it is highly unlikely further discovery would be of assistance to the court,” where the logical effect of the independent contractor law was sufficient to find it preempted and that the motor *472 carrier was entitled to summaiy judgment. Id. at 30 n.2.
The Court finds that the logical impact of reclassifying the plaintiff and the proposed class as employees on Partners’ rates, routes, and services, recounted above from the affidavits of Partners’ Chief Operating Officer, is substantial. The independent contractor law is therefore preempted, both facially and as applied to Partners, under the FAAA. Partners must therefore be entitled to judgment on Mr. Rice’s claims under the independent contractor law as a matter of law.
Because Mr. Rice’s claims for violation of the wage and hours laws and for unjust enrichment are premised on liability under the independent contractor law, they too fail as a matter of law. See Remington v. J.B. Hunt Transport, Inc., 2015 WL 501884, *2 (D.Mass. 2015) (dismissing counts premised on violation of the independent contractor law).
ORDER
For these reasons, Partners’ motion for summaiy judgment must be ALLOWED.